[Civ. No. 15366. Second Dist., Div. Three. May 19, 1947.]

PROVIDENCE BAPTIST ASSOCIATION et al., Appellants, v. LOS ANGELES HOMPA HONOWANJI BUDDHIST TEMPLE et al., Respondents.

A. Brigham Rose for Appellants.

Frank C. Weller, Thomas S. Tobin, Stanton & Stanton and Wright & Millikan for Respondents.

SHINN, Acting P.J.—In this action for damages for forcible entry and detainer, the jury returned a verdict of $5,000 in favor of plaintiff "L. B. Brown, on behalf of the members of Providence Baptist Association" against Los Angeles Hompa Honowanji Buddhist Temple, Julius A. Goldwater, and C. L. Hodel. The motion of defendants for a new trial was granted "on various grounds, including insufficiency of the evidence" and plaintiffs took an appeal from the order. Joined with plaintiff Brown were Providence Baptist Association, a voluntary association, hereinafter called the association, First Baptist Church, a religious corporation, and Providence Baptist Institute, an unincorporated theological association, all colored religious groups. Defendant Los Angeles Hompa Honowanji Buddhist Temple, hereinafter called the temple, is an unincorporated Japanese religious organization; defendant Julius A. Goldwater was its attorney in fact, and defendant C. L. Hodel was a tenant of a portion of the property in question and remotely, if at all, involved in the controversy.

By separate leases on January 5, 1944, the temple leased to the association a church property on Central Avenue, and "a Buddhist Temple, office building with stores, office and basement" on East First Street in Los Angeles, together with certain personal property therein, for the term of one year, commencing January 1, 1944. Although having entrance on the two streets, the premises are entire, consisting of three buildings used as one. The lessee entered into possession and portions of the premises were used by First Street Baptist Church, a member of the association, and Providence Baptist Institute, also a member of the association, the former conducting church services and the latter conducting classes in theology in the respective portions of the premises occupied by them. Plaintiff L. B. Brown was the pastor of the church, and president of the institute. The leases contained a provision that if it became lawful for Japanese aliens to again use the temple premises for religious purposes or for the lessor to sell the premises, the lessor might terminate the lease and repossess the premises on thirty days' notice,

and another provision that if the leases should be in effect at the end of the year and the lessor should have a better offer of rental, the lessee should have the first right to a lease for an additional year at the increased rental.

 There were but two issues in the case, namely, whether defendants were guilty of forcible entry or detainer and, if they were, the amount of damage suffered by plaintiffs by reason of defendants' entry or detention of the premises. There was a conflict of evidence on the first issue and the only proof of damage consisted of such inferences as might have been drawn from the facts hereinafter stated.

Reverend Julius A. Goldwater, a white Buddhist priest, represented the temple as its attorney in fact while the officers and members thereof of Japanese birth or ancestry were retained in the custody of the United States government in the early stages of the war. In the lease negotiations the association was represented by the Reverends Wade and Moss, its president and secretary, and Reverends Ross, Payne and Brown, all of whose signatures appeared on the leases. Commencing about the middle of December, 1944, conferences were held between Reverend Goldwater and members of the board of managers of the association, in which the latter endeavored to obtain a renewal of the lease and Reverend Goldwater objected thereto for the reason that he was expecting the return of the Japanese people in large numbers early in 1945 and felt it would be necessary to have the temple available for them. The minutes of the association meetings of December 15, 1944, January 5, 12, 15, and 19, 1945, attested by the president and secretary of the association, were received in evidence. They record the negotiations between the parties. The meeting of January 12 was attended also by three Japanese, being the president, vice-president, and secretary of the temple. No agreement having been reached, another meeting was arranged for January 15 and the negotiations between the officers of the association and the representatives of the temple were renewed. A further meeting was arranged for January 19, for the presentation by the association of figures showing the actual loss it would sustain if required to move. The minutes of the January 19 meeting show that the secretary reported the loss the association would sustain to be $920.12, ''with a possible $300.00 more''; that the temple offered to allow the association to collect from tenants between January 5 and January

19, up to the sum of $920.12, to be retained by the association, and all in excess of that amount to be paid over to the brotherhood, and the minutes read: "Upon their agreement and the agreement of the Association to the terms stated above, a motion was made by Reverend J. E. Pius and seconded by Reverend E. D. Payne that the Association vacate the building immediately and turn possession thereof over to Mr. Julius A. Goldwater. The motion was carried. The President, Reverend Wade, sent for Reverend L. B. Brown, informed him of the Association's action, received the keys of the building from him and turned same over to Reverend Julius A. Goldwater." The testimony of witnesses corroborated the evidence furnished by the minutes of the association as to the negotiations and the agreement that was reached for the surrender of possession of the property to the temple. Reverend Wade, president of the association, testified that the keys were delivered to Reverend Goldwater, as a representative of the temple. Apparently Reverend Brown kept one of the keys. It appears that the rentals of the store buildings amounted to some $1,900 per month, and that when an effort was made to collect the January rentals under the agreement that had been reached, it was discovered that members of the association had collected all the January rentals, with the exception of about $100, which sum was turned over by the association to Reverend Goldwater. The temple, through Reverend Goldwater, entered into possession of the premises. Reverend Brown appears to have been the only one who objected. He continued with his theological classes. Reverend Brown did not represent the association and, as we say, had apparently consented to the change of possession by surrender of the keys.

Forcible entry and forcible detainer are defined by sections 1159 and 1160 of the Code of Civil Procedure. Forcible entry consists of entering upon or into real property by breaking open doors, windows or other parts of a house or by any kind of violence or circumstances of terror or, after a peaceable entry, turning out the party in possession by force, threats or menacing conduct. Forcible detainer, so far as here pertinent, consists of unlawfully holding and keeping possession of real property by force or by menaces and threats of violence, whether possession was acquired peaceably or other-

wise. There was no evidence that the premises were entered other than by means of the keys, nor was there evidence of the use of force, violence, menaces, or threats of violence. There was evidence of voluble objections on the part of Reverend Brown, and of an excited argument. The three Japanese representatives of the temple entered various parts of the building with Reverend Goldwater, and Reverend Brown testified that blackboards which he had upon the wall were taken down, and there was evidence of an argument over the ownership of a chair which Reverend Brown claimed, but which he disowned when it was turned over to disclose that it bore a swastika emblem. No one laid hands upon Reverend Brown or uttered any threats. The trial judge, in ruling upon the motion for new trial, would have been justified in concluding from the evidence that no circumstances of terror accompanied the entry or detention of the premises. The entry appears to have been effected and possession retained peaceably and quietly except for the vocal resistance of Rev· erend Brown. The court no doubt was impressed by the fact that the management of the association decided to surrender possession of the premises in the spirit expressed by the president, Reverend Wade, who, it was testified, stated at a meeting with the temple representatives: ''That the Japanese were a minority people like they themselves, they had no wish to deprive them of their own property, and that they could understand the situation, but still they wished to have it if it is available and if it is not available then they cannot help it.''

On January 19, 1945, defendant Hodel, a physician, entered into a lease with the temple of the office building, stores, rooms and basements for a period of three years. At this time the temple was in undisputed possession of the premises. Hodel had been a tenant of the association and appears to have been a mere bystander during the controversy between the association and the temple.

So far as the issue of damages is concerned, it appears that plaintiff association was compensated to the extent of more than $900 for the detriment it claimed it would suffer by prompt removal from the premises. The court no doubt considered also in this connection the testimony of Reverend Brown with reference to the surrender of possession, as follows: ''Q. Well it (Providence Baptist Association) had taken out any equipment it had there, had it not? A. No,

they had no equipment there but their hats.'' There was a reasonable basis for a belief that the damages were excessive.

 Sufficient facts have been stated from the record to demonstrate that a verdict in favor of defendants would not have been without support in the evidence. Under such circumstances an order granting a motion for new trial for insufficiency of the evidence is not an abuse of discretion. (*Ballard* v. *Pacific Greyhound Lines*, 28 Cal.2d 357 [170 P.2d 465]; *Williams* v. *Field Transportation Co.*, 28 Cal.2d 696 [171 P.2d 722].)

The orders appealed from are affirmed.

Wood, J., and Kincaid, J. pro tem., concurred.